EXHIBIT "A"

**BLANK ROME LLP**
*A Pennsylvania LLP*
Michael J. Conlan, Esquire
New Jersey Resident Partner
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
609-750-7700
*Attorneys for Plaintiff Heartland Payment Systems, Inc.*

SUPERIOR COURT BERGEN COUNTY
FILED

MAY 1 2 2011

DEPUTY CLERK

| | | |
|---|---|---|
| HEARTLAND PAYMENT SYSTEMS, INC., | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION: BERGEN COUNTY |
| Plaintiff, | : | DOCKET NO. BER-L- 4143-11 |
| | : | |
| v. | : | Civil Action |
| | : | |
| CARRIE NOTHEIS and CLEARENT LLC, | : | **COMPLAINT** |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiff, Heartland Payment Systems, Inc. ("HPS"), a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business at 90 Nassau Street, Princeton, New Jersey, by way of complaint against defendants Carrie Notheis ("Notheis") and Clearent LLC ("Clearent"), hereby alleges and says:

**PARTIES**

1.      Upon information and belief, Defendant Carrie Notheis resides at 405 Highland Meadows Place, Wentzville, Missouri 63385-2634.

2.      Upon information and belief, Defendant Clearent LLC is a limited liability corporation existing under the laws of Missouri with its principal place of business at 222 South Central Avenue #700, Saint Louis, Missouri, 63105.

128904.00600/50391820v.1

3.      HPS is engaged in, among other things, the business of processing electronically transmitted credit and debit card transactions of businesses ("Merchants") that accept payment for goods and services through credit and debit cards.

**COUNT ONE**
**BREACH OF CONTRACT (EMPLOYMENT AGREEMENT)**
**(v. Notheis)**

4.      On or about February 6, 2002, Notheis was hired by HPS as a Relationship Manager.  Notheis entered into a Relationship Manager Agreement, dated February 6, 2002, as a condition of employment.

5.      On May 20, 2008, Notheis entered into another Relationship Manager Agreement ("Agreement"), a copy of which is attached hereto as Exhibit A.  This Agreement expressly supersedes all prior agreements.

6.      Section 1 of the Agreement, titled "Employment," provides:

> HPS agrees to employ RM as an employee at-will and RM accepts
> such employment . . . . RM agrees to devote full working time and
> best efforts to such employment and during the term thereof shall
> not solicit merchants on behalf of any other person or entity that
> offers the same or similar services as those offered by HPS.

7.      Upon information and belief, on or before January 2011, while she was still working for HPS, Notheis began working for Clearent, HPS's direct competitor, at the same time.

8.      Upon information and belief, during Notheis' employment with HPS, she used HPS's confidential customer information to induce HPS merchants to terminate their contracts with HPS and enter into new contracts with Clearent, in violation of Section 1 of the Agreement.

9.    On or about April 15, 2011, Notheis voluntarily terminated her employment with HPS.

10.    Carrie Notheis is currently employed as the Director of Business Development for the Direct Sales Channel at Clearent.

11.    As a result of Notheis' breach of contract, HPS has suffered and will continue to suffer substantial damages.

WHEREFORE, plaintiff HPS demands the Court enter judgment against Notheis awarding damages in an amount to be determined at trial, together with attorneys' fees, costs of suit, and such other and further relief as the Court deems just and reasonable.

## COUNT TWO
## BREACH OF CONTRACT (NON-SOLICITATION AGREEMENT)
### (v. Notheis)

12.    HPS repeats and incorporates the allegations contained in each paragraph of the Complaint as if set forth fully herein.

13.    Section 7 of the Agreement, titled "Non-Solicitation," provides:

(a)    Non-Solicitation of HPS Merchants.

(i)    During the period of his/her employment with HPS and for a period of twelve (12) months after RM's termination for any reason including but not limited to involuntary termination (with or without cause) or voluntary termination, RM hereby covenants that he/she will not, directly or indirectly, solicit, entice or induce any HPS Merchant or other party having a contractual or business relationship with HPS to terminate or modify its contractual or business relationship with HPS or assist any other person or entity to do so.

(ii)    During the period of his/her employment with HPS and for a period of sixty (60) months after RM's termination for any reason whatsoever including but not limited to involuntary termination (with or without cause) or

voluntary termination, RM hereby covenants that he/she will not, directly or indirectly, solicit, entice or induce any HPS Merchant for which RM has been paid compensation or any new owner of a merchant location for which RM has been compensated to (a) become a Merchant of any other person or entity engaged in any business activity that competes with any business conducted by HPS at any time during the period of RM's employment with HPS, or (b) cease doing business with HPS, and RM agrees that he/she will not assist any person or entity in taking any action described in the foregoing subsections (a) and (b).

14.     Since her termination from HPS, Notheis has violated Section 7 of the Agreement by soliciting certain merchants of HPS ("Merchants") who have or had contracts with HPS and inducing these Merchants to terminate their contracts with HPS and enter into new contracts with HPS's competitors.

15.     As a result of Notheis' conduct, HPS has suffered and continues to suffer damages.

16.     In Section 8 of the Agreement, Notheis acknowledged that if she violated or threatened to violate the non-solicitation provisions, HPS would suffer immediate and irreparable harm, such that HPS would be entitled to temporary, preliminary and permanent injunctive relief and restraints enjoining the breaching conduct and such other legal and equitable remedies that may be provided by applicable law (without the necessity of posting any bond or other security), including damages, costs of suit, and attorney's fees.

17.     Unless Notheis is enjoined from breaching the non-solicitation provisions of the Agreement, HPS will continue to lose customers and suffer irreparable injury to its business.

WHEREFORE, plaintiff HPS demands judgment against Notheis as follows:

(a) an order enjoining Notheis, for a period of 12 months beginning April 15, 2011 from, directly or indirectly, soliciting, enticing or inducing any HPS Merchant or any other party having a contractual or business relationship with HPS to terminate or modify its contractual or business relationship with HPS or assist any other person or entity to do so;

(b) an order enjoining Notheis, for a period of 60 months beginning April 15, 2011 from directly or indirectly, soliciting, enticing, or inducing any HPS Merchant for which Notheis was paid compensation or any new owner of a merchant location for which Notheis received compensation to (i) become a Merchant of any other person or entity engaged in any business activity that competes with any business conducted by HPS, at any time during the period of Notheis' employment with HPS, or (ii) cease doing business with HPS and assisting any person or entity in taking any action described in the foregoing subsections (i) and (ii); and

(c) awarding damages in an amount to be determined at trial, together with attorneys' fees, costs of suit, and such other and further relief as the Court deems just and reasonable.

**COUNT THREE**
**BREACH OF CONTRACT (CONFIDENTIALITY AGREEMENT)**
**(v. Notheis)**

18.     HPS repeats and incorporates the allegations contained in each paragraph of the Complaint as if set forth fully herein.

19.     Section 6 of the Agreement, titled "Confidentiality," provides:

> Relationship Manager acknowledges that, in the course of his or her employment, he or she has had and will have access to and has become and will become aware of and informed of confidential and/or proprietary information that is a competitive asset of HPS and its affiliates, including, but not limited to the terms of the agreements or arrangements between HPS and any third parties, merchant/client/customer lists, lists of independent sales organizations, lists of sales agents and agencies, marketing strategies, marketing methods, development ideas and strategies . . . . RM will keep all Confidential Information in strict confidence while employed by HPS and thereafter and will not directly or indirectly make known, divulge, reveal, furnish, make available or use any Confidential Information . . .   RM's obligations of confidentiality hereunder will survive the termination of this Agreement . . .

20.     During Notheis' employment with HPS, she had access to and was provided with HPS's confidential information relating to its customers and products.  Information relating to HPS's customers, including their names, addresses, terms of their contracts with HPS, pricing, and transaction volume is confidential and proprietary information.

21.     HPS has taken adequate measures to protect the confidentiality of this information, including by having Notheis and other employees sign the Agreement, which expressly prohibits the use and disclosure of such information outside of HPS.

22.     Nevertheless, Notheis used HPS's confidential customer information to solicit HPS's Merchants in order to induce them to terminate their contracts with HPS and enter into new contracts with HPS's competitors.

23.     Notheis has benefited from inducing HPS's Merchants into entering into contracts with HPS's competitors.

24.     As a result of Notheis' conduct, HPS has suffered and will continue to suffer substantial damages and irreparable harm.

WHEREFORE, plaintiff HPS demands judgment against Notheis as follows:

(a) an order enjoining Notheis from using, disclosing, or transmitting for any purpose, including, initiation of any contact and/or solicitation of HPS's Merchants, the information contained in the records of HPS or concerning its Merchants, including, but not limited to, their names, addresses, phone numbers, and their financial information; and

(b) damages in an amount to be determined at trial, together with attorneys' fees, costs of suit, and such other and further relief as the Court deems just and reasonable.

## COUNT FOUR
## MISAPPROPRIATION OF TRADE SECRETS
### (v. Notheis)

25.    HPS repeats and incorporates the allegations contained in each paragraph of the Complaint as if set forth fully herein.

26.    During Notheis' employment with HPS, she had access to and was provided with trade secrets of HPS.

27.    HPS had taken adequate measures to protect its trade secrets including Notheis' agreement not to use or disclose such information outside of HPS.

28.    Nevertheless, Notheis misappropriated certain trade secrets of HPS to use in soliciting HPS's Merchants and inducing them to terminate their contracts with HPS, and to enter into new contracts with competitors of HPS.

29.    As a result of Notheis' misappropriation of trade secrets, HPS has suffered and will continue to suffer substantial damages and irreparable harm.

WHEREFORE, plaintiff HPS demands judgment against Notheis as follows:

(a) an order enjoining Notheis from using, disclosing, or transmitting for any purpose HPS's trade secrets; and

(b) damages in an amount to be determined at trial, together with attorneys' fees, costs of suit, and such other and further relief as the Court deems just and reasonable.

## COUNT FIVE
## BREACH OF DUTY OF LOYALTY
### (v. Notheis)

30.    HPS repeats and incorporates the allegations contained in each paragraph of the Complaint as if set forth fully herein.

31.     As an HPS employee, Notheis owed a duty of loyalty to HPS, including, but not limited to, maintaining the confidentiality of HPS's proprietary and confidential information and pursuing business opportunities on behalf of HPS.

32.     Upon information and belief, on or before January 2011, while she was still working for HPS, Notheis began working for Clearent, HPS's direct competitor, at the same time.

33.     Upon information and belief, during Notheis' employment with HPS, she used HPS's confidential customer information to induce HPS merchants to terminate their contracts with HPS and enter into new contracts with Clearent, in breach of her duty of loyalty to HPS.

34.     As a result of Notheis' breach of her duty of loyalty, HPS has suffered and will continue to suffer substantial damages.

WHEREFORE, plaintiff HPS demands the Court enter judgment against Notheis awarding damages in an amount to be determined at trial, together with attorneys' fees, costs of suit, and such other and further relief as the Court deems just and reasonable.


## COUNT SIX
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (v. Notheis)

35.     HPS repeats and incorporates the allegations contained in each paragraph of the Complaint as if set forth fully herein.

36.     In contravention of Notheis' post employment obligations, Notheis intentionally solicited HPS's Merchants, using HPS's confidential information, in order to induce them to terminate their contracts with HPS and enter into new contracts with HPS's competitors.

37.    At the time Notheis solicited these Merchants, she was aware that these Merchants had contractual relationships with HPS.

38.    Notheis acted with actual malice or with wanton and willful disregard for HPS, which was foreseeably injured as a result of Notheis' conduct.

39.    As a result of Notheis' conduct, HPS has suffered and will continue to suffer substantial damages and irreparable harm.

WHEREFORE, plaintiff HPS demands judgment against Notheis as follows:

(a) an order enjoining Notheis from attempting to induce HPS merchants to breach their contractual relationships with HPS; and

(b) damages in an amount to be determined at trial, together with attorneys' fees, costs of suit, and such other and further relief as the Court deems just and reasonable.

## COUNT SEVEN
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (v. Clearent)

40.    HPS repeats and incorporates the allegations contained in each paragraph of the Complaint as if set forth fully herein.

41.    Notheis intentionally solicited HPS's Merchants, using HPS's confidential information, while employed by Clearent and acting within the scope of her employment with Clearent, in order to induce them to terminate their contracts with HPS and enter into new contracts with Clearent.

42.    At the time Notheis solicited these Merchants on behalf of Clearent, she and Clearent were aware that these Merchants had contractual relationships with HPS.

43.     Clearent and Notheis acted with actual malice or with wanton and willful disregard for HPS, which was foreseeably injured as a result.

44.     As a result of Clearent's conduct, HPS has suffered and will continue to suffer substantial damages and irreparable harm.

WHEREFORE, plaintiff HPS demands judgment against Clearent as follows:

(a) an order enjoining Clearent from attempting to induce HPS merchants to breach their contractual relationships with HPS; and

(b) damages in an amount to be determined at trial, together with attorneys' fees, costs of suit, and such other and further relief as the Court deems just and reasonable.

## COUNT EIGHT
## AIDING AND ABETTING TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS
### (v. Clearent)

45.     HPS repeats and incorporates the allegations contained in each paragraph of the Complaint as if set forth fully herein.

46.     Notheis intentionally solicited HPS's Merchants, using HPS's confidential information, while employed by Clearent and acting within the scope of her employment with Clearent, in order to induce them to terminate their contracts with HPS and enter into new contracts with Clearent.

47.     At the time Notheis solicited these Merchants on behalf of Clearent, she and Clearent were aware that these Merchants had contractual relationships with HPS.

48.     Clearent and Notheis acted with actual malice or with wanton and willful disregard for HPS, which was foreseeably injured as a result.

49.     Upon information and belief, Clearent participated in, aided, and encouraged Notheis' conduct, and subsequently ratified Notheis' conduct, knowing that it wrong and that it was being done for Clearent's benefit.

50.     As a result of Clearent's conduct, HPS has suffered and will continue to suffer substantial damages and irreparable harm.

WHEREFORE, plaintiff HPS demands judgment against Clearent as follows:

(a) an order enjoining Clearent from attempting to induce HPS merchants to breach their contractual relationships with HPS; and

(b) damages in an amount to be determined at trial, together with attorneys' fees, costs of suit, and such other and further relief as the Court deems just and reasonable.

## COUNT NINE
## AIDING AND ABETTING BREACH OF DUTY OF LOYALTY
### (v. Clearent)

51.     HPS repeats and incorporates the allegations contained in each paragraph of the Complaint as if set forth fully herein.

52.     As an HPS employee, Notheis owed a duty of loyalty to HPS, including, but not limited to, maintaining the confidentiality of HPS's proprietary and confidential information and pursuing business opportunities on behalf of HPS.

53.     Upon information and belief, on or before January 2011, while Notheis was still working for HPS, she began working for Clearent, HPS's direct competitor, at the same time.

54.     Upon information and belief, during Notheis' employment with HPS, she used HPS's confidential customer information to induce HPS merchants to terminate their contracts with HPS and enter into new contracts with Clearent, in breach of her duty of loyalty to HPS.

55.     Upon information and belief, Clearent participated in, aided, and encouraged Notheis' conduct, and subsequently ratified Notheis' conduct, knowing that it was wrong and that it was being done for Clearent's benefit.

56.     As a result of Clearent's conduct, HPS has suffered and will continue to suffer substantial damages and irreparable harm.

WHEREFORE, plaintiff HPS demands the Court enter judgment against Clearent awarding damages in an amount to be determined at trial, together with attorneys' fees, costs of suit, and such other and further relief as the Court deems just and reasonable.

## COUNT TEN
## AIDING AND ABETTING MISAPPROPRIATION OF TRADE SECRETS
### (v. Clearent)

57.     HPS repeats and incorporates the allegations contained in each paragraph of the Complaint as if set forth fully herein.

58.     During Notheis' employment with HPS, she had access to and was provided with trade secrets of HPS.

59.     HPS had taken adequate measures to protect its trade secrets including, but not limited to, Notheis' agreement not to use or disclose such information outside of HPS.

60.     Nevertheless, Notheis misappropriated certain trade secrets of HPS to use in soliciting HPS's Merchants on behalf of Clearent, and inducing them to terminate their contracts with HPS and to enter into new contracts with Clearent.

61.     Upon information and belief, Clearent participated in, aided, and encouraged Notheis' conduct, and subsequently ratified Notheis' conduct, knowing that it was wrong and that it was being done for Clearent's benefit.

62.   As a result of Clearent's conduct, HPS has suffered and will continue to suffer substantial damages and irreparable harm.

WHEREFORE, plaintiff HPS demands judgment against Clearent as follows:

(a) an order enjoining Clearent from using, disclosing, or transmitting for any purpose HPS's trade secrets; and

(b) damages in an amount to be determined at trial, together with attorneys' fees, costs of suit, and such other and further relief as the Court deems just and reasonable.

**COUNT ELEVEN**
**ATTORNEYS' FEES AND COSTS**
**(v. Notheis)**

63.   HPS repeats and incorporates the allegations contained in each paragraph of the Complaint as if set forth fully herein.

64.   Pursuant to Section 11(k) of the Agreement, the parties agreed that:

> In any suit, action, or proceeding arising out of or related to this Agreement, the successful party shall be awarded, in addition to any other relief to which it is found to be entitled, costs of suit, fees of experts and reasonable attorneys' fees against the unsuccessful party.

65.   As a result of Notheis' violations of the Agreement, HPS was forced to bring this action to enforce the terms of the Agreement and is entitled to be reimbursed for the attorneys' fees and costs incurred in connection with this action.

WHEREFORE, HPS demands the Court enter judgment against Notheis awarding HPS its costs of suit, experts' fees, and reasonable attorneys' fees.

**BLANK ROME LLP**
*A Pennsylvania LLP*
Attorneys for Plaintiff
Heartland Payment Systems, Inc.

By: _____
　　　　Michael J. Conlan

Dated:  May 11, 2011

## CERTİFICATION PURSUANT TO RULE 4:5-1

I certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration, and that no such other action or arbitration is contemplated. I know of no other person who should be joined in this action at this time.

**BLANK ROME LLP**
*A Pennsylvania LLP*
Attorneys for Plaintiff
Heartland Payment Systems, Inc.

By: _____
Michael J. Conlan

Dated: May 11, 2011

# Exhibit A

## VESTED RELATIONSHIP MANAGER AGREEMENT

This AGREEMENT is made as of the _____ day of _____ , 200_ by and between HEARTLAND PAYMENT SYSTEMS, INC., a Delaware Corporation ("HPS") and _____ (the "Relationship Manager" or "RM").

WHEREAS, HPS is engaged in the business of marketing and providing electronic payment transaction processing services, payroll processing, gift card, check services and related products and services; and

WHEREAS, subject to the terms and conditions of this Agreement, HPS wishes to employ Relationship Manager and RM wishes to accept such employment effective on the date hereof.

NOW, THEREFORE, in consideration of the premises and mutual covenants herein contained, the parties agree as follows:

1. Employment. HPS agrees to employ RM as an employee at-will and RM accepts such employment. At-will employment means that HPS and RM are free to terminate the employment relationship at any time and for any reason, with or without notice. Nothing in this Agreement shall be construed to change or modify the at-will employment relationship and no supervisor, manager, employee, or other representative or agent of HPS has the authority to make any promise or commitment contrary to the foregoing, or to enter into any agreement with RM guaranteeing employment for a specific duration. RM agrees to devote full working time and best efforts to such employment and during the term thereof shall not solicit merchants on behalf of any other person or entity that offers the same or similar services as those offered by HPS. RM shall follow all policies and procedures described in the Sales Policy Manual.

2. Compensation. RM shall receive compensation in accordance with the provisions of the HPS Sales Policy Manual as such manual may be amended from time to time.

3. Vesting. RM must maintain the Minimum Annual Contacts with each merchant as defined in the HPS Sales Policy Manual to continue earning Residual Commissions for each merchant in his or her portfolio. As a Vested RM, unless RM's employment is terminated for cause as defined herein, and subject to the rights of HPS to purchase portfolio equity pursuant to Section 4 hereof, RM shall continue to receive Residual Commissions so long as merchants signed by RM continue to process bankcard, gift card, check services or payroll transactions through HPS and Minimum Annual Contacts are maintained.

4.   Purchase and Sale of Portfolio Equity.  As used herein "Portfolio Equity" means 30 times the total of average monthly residuals for the immediately preceding twelve months for merchants currently processing with HPS.

(a) HPS shall have the right, but not the obligation, at any time to purchase RM's portfolio equity upon thirty (30) days written notice to RM.

(b) In payment for the Portfolio Equity purchased by HPS pursuant to this Agreement, HPS shall pay RM an amount equal to thirty (30) times the average monthly residual commissions received by RM for the twelve (12) months immediately preceding the month in which notice of purchase or sale is given for merchants processing transactions with HPS on the date notice is given.  There shall be set-off from the amount payable to RM under this section any amount due to HPS under the Loss Allocation provisions of the Sales Policy Manual, signing bonus variances, advances and any other amounts owed by RM to HPS.  HPS shall have the option to make a single lump sum payment to RM or to make payment in twelve (12) equal monthly installments with interest at the prime rate as published at the end of the previous calendar quarter in the Wall Street Journal. Signing bonus variances, if any, shall be added to or deducted from monthly payments.

5.   Termination of Employment
(a) Termination for Cause.  The following shall constitute cause for termination of employment, and upon such termination RM, if previously Vested, shall no longer be Vested and RM shall have no right to any continuing Residual Commissions:  (i) RM's commission of a felony or the commission of any other crime or offense that materially affects HPS (whether or not the offense is indictable); (ii) any statement or act by RM which violates HPS personnel policies then in effect or which, in the reasonable judgment of management of HPS, might expose HPS to any claim or legal action (including any statement or act by RM relating to the disability, race, religion, color, national origin, sexual preference, sex or age of any individual);  (iii) the performance of any act or failure to perform any act (other than in good faith) to the detriment of the business of HPS;  (iv) any act constituting fraud or dishonesty in connection with RM's employment or the performance by RM of his or her obligations under this Agreement; (v) the issuance by a court or regulatory body against RM of any final consent decree, cease-and-desist or similar order relating to any violation or alleged violation of any federal or state law governing the business of HPS; or (vi) material breach of the terms of this Agreement or the Sales Policy Manual.

RM
Rev. 05/05

2

(b) <u>Death or Disability</u>. In the event of RM's death or permanent disability, this Agreement shall terminate immediately and, in the case of a Vested RM, HPS shall purchase RM's Portfolio Equity as provided in Section 4(b) hereof. If RM was not vested at the time of death or permanent disability, HPS shall in its sole discretion either: (i) continue to pay RM (or RM's executor, administrator or other legal representative) the Residual Commissions that would otherwise be payable to RM for a period of twelve (12) months following such death or permanent disability, or (ii) pay RM (or RM's executor, administrator or other legal representative) a lump sum equal to twelve (12) times the Residual Commissions payable to RM for active merchants in the month immediately prior to such death or permanent disability.

6.  <u>Confidentiality</u>. Relationship Manager acknowledges that, in the course of his or her employment, he or she has had and will have access to and has become and will become aware of and informed of confidential and/or proprietary information that is a competitive asset of HPS and its affiliates, including, but not limited to the terms of agreements or arrangements between HPS and any third parties, merchant/client/customer lists, lists of independent sales organizations, lists of sales agents and agencies, marketing strategies, marketing methods, development ideas and strategies, personnel training, support and development programs and materials, financial results, strategic plans and demographic analyses, trade secrets, business plans, product designs, statistical data, operating procedures, computer software and programs, source codes, pricing models, product information, compensation schedules and reports, and any other information concerning HPS or any of its affiliates or the business of HPS or any of its affiliates or any employees, suppliers, resellers or customers of any of them (collectively, "Confidential Information"). RM will keep all Confidential Information in strict confidence while employed by HPS and thereafter and will not directly or indirectly make known, divulge, reveal, furnish, make available or use any Confidential Information (except in good faith in the course of his or her regular authorized duties on behalf of HPS and for the benefit of HPS). Upon termination of his or her employment with HPS, or upon request by HPS, RM shall destroy or deliver to HPS all Confidential Information that is in human or machine readable form that is then in the possession or control of RM. RM's obligations of confidentiality hereunder will survive the termination of this Agreement until and unless any such Confidential Information becomes, through no fault of RM, generally known to the public or Relationship Manager is required by law to make disclosure (after giving HPS notice and an opportunity to contest such requirement). RM's obligations under this section are in addition to, and not in limitation or preemption of, all other obligations of confidentiality, which RM may have to HPS under general legal or equitable principles.

7.     Non-Solicitation.

(a) Non-Solicitation of HPS Merchants.

(i)  During the period of his/her employment with HPS and for a period of twelve (12) months after RM's termination for any reason including but not limited to involuntary termination (with or without cause) or voluntary termination, RM hereby covenants that he/she will not, directly or indirectly, solicit, entice or induce any HPS Merchant or other party having a contractual or business relationship with HPS to terminate or modify its contractual or business relationship with HPS or assist any other person or entity to do so.

(ii)  During the period of his/her employment with HPS and for a period of sixty (60) months after RM's termination for any reason whatsoever including but not limited to involuntary termination (with or without cause) or voluntary termination, RM hereby covenants that he/she will not, directly or indirectly, solicit, entice or induce any HPS Merchant for which RM has been paid compensation or any new owner of a merchant location for which RM has been compensated to (a) become a Merchant of any other person or entity engaged in any business activity that competes with any business conducted by HPS at any time during the period of RM's employment with HPS, or (b) cease doing business with HPS, and RM agrees that he/she will not assist any person or entity in taking any action described in the foregoing subsections (a) and (b).

(b) Non-Solicitation of Employees.   During the period of RM's employment by HPS and for a period of twenty-four (24) months after termination for any reason whatsoever including but not limited to involuntary termination (with or without cause) or voluntary termination, RM will not directly or indirectly solicit, recruit or hire any employee of HPS to work for a third party other than HPS or engage in any activity that would cause any employee to violate any agreement with HPS.

8.     Remedies.   The parties acknowledge that any disclosure of the Confidential Information or breach of the Non-solicitation provisions of this Agreement will cause immediate, irreparable and continuing damage to HPS for which there is no adequate remedy at law.   Consequently, the parties acknowledge and agree that in the event of any breach or violation or threatened breach or violation of the Confidentiality provisions and Non-solicitation provisions of this Agreement, HPS and its successors and assigns shall be entitled to temporary, preliminary and permanent injunctive relief and restraints enjoining and restraining such breach or violation or threatened breach or violation and such other legal and equitable remedies as may be provided by applicable law (without the necessity of posting any bond or other security), including damages, costs of suit and attorney's fees.

9.  <u>Indemnification.</u> RM agrees to indemnify and hold harmless HPS and its affiliates and their respective officers, directors, employees and agents from and against any and all losses, claims, liabilities, damages, costs and expenses (including reasonable attorneys' fees) incurred in connection with or as a result of :
    (a) Inaccuracy in any representation made by RM herein.
    (b) Material breach by RM of any of the terms of this Agreement.
    (c) Use of any motor vehicle in the course of employment with HPS.

10. <u>Representations.</u> Relationship Manager represents and warrants that he or she is fully authorized and empowered to enter into this Agreement, and that neither the execution and delivery of this Agreement, nor the performance of his or her obligations under this Agreement, will violate or constitute a breach of (a) any agreement to which he or she is a party or by which he or she is bound or (b) any obligation or duty owed to any other person or entity, including but not limited to any employment agreements or restrictive covenants.

11. <u>Miscellaneous.</u>
    (a) <u>Confidential Agreement.</u> Relationship Manager agrees that he or she will maintain as confidential the terms of this Agreement unless otherwise required by law or court order to disclose same, or to his legal or professional advisors.
    (b) <u>Waivers.</u> The waiver by either party of a breach of any provision of this Agreement shall not operate as or be construed as a waiver of any subsequent breach thereof.
    (c) <u>Notices.</u> Any and all notices or other communications required or permitted to be given under or in connection with this Agreement shall be in writing and shall be deemed given three (3) days after mailing in the United States, by regular mail, postage prepaid, or on the date of delivery, if delivered by hand or by a nationally recognized delivery service at the following addresses (as such addresses may by notice hereunder be changed):

If to Relationship Manager to:

_____

_____

_____

If to HPS to:
   Heartland Payment Systems, Inc.
   Attn: Human Resource Administrator
   25115 Country Club Boulevard
   North Olmsted, OH 44070

(d) <u>Successors and Assigns.</u> This Agreement shall be binding upon and shall inure to the benefit of HPS and its successors and assigns, and RM and his or her legal representatives, heirs, legatees and distributees, but shall not be assignable or delegable by RM (and any attempted assignment or delegation by RM shall be void).

(e) <u>Entire Agreement.</u> This Agreement supersedes any and all prior written or oral agreements, representations and warranties made by or between HPS and Relationship Manager, or between RM and any predecessor of HPS, and constitutes the entire agreement between the parties hereto with respect to such subject matter.

(f) <u>Modification or Amendment.</u> No modification or amendment to this Agreement shall be effective unless in writing and signed by RM and an authorized officer of HPS.

(g) <u>Omission, Delay or Failure to Exercise.</u> No omission, delay or failure on the part of any party in exercising any rights hereunder, and no partial or single exercise hereof will constitute a waiver of such rights or of any other rights hereunder.

(h) <u>Validity.</u> If any provision of this Agreement or the application of any provision hereof to any person or circumstances is held invalid, unenforceable or otherwise illegal, the remainder of this Agreement and the application of such provision to any other person or circumstances will not be affected, and the provision so held to be invalid, unenforceable or otherwise illegal will be reformed to the extent (and only to the extent) necessary to make it enforceable, valid or legal.

(i) <u>Governing Law.</u> This Agreement shall be governed by, and construed in accordance with the laws of the State of New Jersey, without giving effect to conflict of laws principles.

(j) <u>Jurisdiction and Venue.</u> Any suit, action or proceeding arising out of or relating to this Agreement shall be brought only in the Superior Court in the County of Bergen, New Jersey or the United States District Court for the District of New Jersey and RM hereby agrees and consents to the personal and exclusive jurisdiction of said courts over him or her as to all suits, actions and proceedings arising out of or related to this Agreement, and RM further waives any claim that such suit, action or proceeding is brought in an improper or inconvenient forum. For purposes of any such suit, action or proceeding, the parties agree that any process to be served in connection therewith shall be sent or mailed to the other party at the address above, which may be changed from time to time and each party shall notify the other party of any such change.

(k) <u>Attorney's Fees.</u> In any suit, action or proceeding arising out of or related to this Agreement, the successful party shall be awarded, in addition to any other relief to which it is found to be entitled, costs of suit, fees of experts and reasonable attorneys' fees against the unsuccessful party.

(l) Waiver of Jury Trial.  HPS and RM irrevocably waive any right to trial by jury in any suit, action or proceeding under, in connection with or to enforce this Agreement.

(m) Definitions.  All words used in this Agreement shall be construed to be of such gender or number as the circumstances require and, except as otherwise expressly provided, the term "including" shall mean "including without limitation".

THE UNDERSIGNED STATE THAT THEY HAVE CAREFULLY READ THE FOREGOING AGREEMENT, THEY KNOW THE CONTENTS THEREOF, THEY HAVE HAD THE OPPORTUNITY TO DISCUSS THE CONTENTS OF THIS AGREEMENT WITH COUNSEL OF THEIR CHOOSING, THEY FREELY AND VOLUNTARILY CONSENT TO ALL TERMS AND CONDITIONS THEREOF, AND THEY SIGN THE SAME AS THEIR OWN FREE ACT.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year appearing on page one of this Agreement.

Relationship Manager:                    HEARTLAND PAYMENT SYSTEMS INC.

By: _____             By: _____

Print Name: CARRIE NOTHERS               Print Name: Jean H. Josen

Date: 5/20/08                            Title: Executive Director HL

RM
Rev. 05/05                               7